

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 04, 2010**

_____
CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-10732-CAG |
| | § | |
| LORI ANN OLIVAREZ, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| IRMA KESSELRING | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| LORI ANN OLIVAREZ | § | ADV. NO. 09-1025- CAG |
| | § | |
| Defendant | § | |
| | § | |

**MEMORANDUM OPINION ON CREDITOR'S MOTION TO DETERMINE DISCHARGEABILITY UNDER 11 U.S.C. §523(a)(2)(A)**

Came on to be considered the Complaint to Determine Dischargeability of Debt owed to

Ms. Irma Kesselring ("Plaintiff" or "Creditor") by Ms. Lori Ann Olivarez ("Defendant" or

1

"Debtor"). The Court has reviewed Plaintiff's Complaint, Defendant's Answer, and the stipulation of facts contained in each party's pre-trial order and has considered the arguments and evidence of counsel. Based on the foregoing, the Court finds that Plaintiff's claims against Defendant are nondischargeable for the reasons stated below.

Ms. Kesselring filed an Adversary Complaint against Ms. Olivarez on April 13, 2009. On May 5, 2009, Ms. Olivarez filed "Debtor's Response to Complaint Objecting to Dischargeability of Debt". Ms. Kesselring filed an Adversary Complaint to determine the dischargeability of her debt against Mr. Bret Clyde Doyle, alleging the same facts as those alleged in the complaint against Ms. Olivarez. The two cases were tried jointly on October 29, 2009 to determine the dischargeability of the debt.

Plaintiff in this case seeks to determine that certain debts owed to her should be held non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I) (determination of dischargeability of debt) on which this Court can enter a final judgment. The following represents the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rules 7052 and 9014.

## FACTS

In the spring of 2005, Irma Kesselring, in seeking to bring suit against her business partner, visited the offices of Sullivan, Doyal, Jablonski & Olivarez, L.L.P. Ms. Kesselring met with Robert Jablonski, one of the four attorneys practicing at the general partnership of Sullivan, Doyal, Jablonski & Olivarez, L.L.P. Ms. Kesselring paid a $5,000 retainer to Mr. Jablonski. Mr. Jablonski then told Ms. Kesselring that he had filed a lawsuit on her behalf against her business partner. No such lawsuit was ever filed.

Ms. Kesselring brought a malpractice suit against Mr. Jablonski, his business partners, and his partnership law firm before the 33rd Judicial District Court of Burnet County, Texas. The jury in that case determined, *inter alia*, that Mr. Jablonski had committed fraud and that Mr. Jablonski's actions were within the course and scope of the business enterprise. Additionally, the Judge in that case determined as a matter of law that Sullivan, Doyal, Jablonski & Olivarez, L.L.P. was in fact a general partnership.

There is no issue between the parties over the wrongdoing of Mr. Jablonski or the determination that the law firm was, in fact, a general partnership and therefore all partners are jointly and severally liable for any debts and liabilities incurred by one partner. The Debtor has conceded that Ms. Olivarez, Mr. Doyal, and the other partners of Sullivan, Doyal, Jablonski & Olivarez, L.L.P. are liable for the debts incurred as a result of Mr. Jablonski's fraud, regardless of their knowledge or culpability. See **Tummel & Carroll v. Quinlivan (In re Quinlivan)**, 434 F.3d 314, 318-19 (5th Cir. 2005) (holding that in a general partnership, debt incurred as a result of a business partner's fraud will be nondischargeable, regardless of the culpability of the party seeking the discharge).

### PARTIES' CONTENTIONS

The issue in this case stems from the jury instruction given in the state court trial on whether Mr. Jablonski had committed fraud. The Defendant contends that the jury instruction given in the state court trial was not enough to support a finding of fraud under 11 U.S.C. §523(a)(2)(A) because the elements do not match. In the state court trial, the jury was asked if Robert Jablonski committed fraud against Ms. Kesselring. (Ex.7, p. 14.) According to the instructions given to the jury, fraud occurs when:

    a.    a party makes material misrepresentation

    b.    the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion

    c.    the misrepresentation is made with the intention that it should be acted on by the other party, and

    d.    the other party acts in reliance on the misrepresentation and thereby suffers injury.

The state court defined "misrepresentation" to mean

    A false statement of fact or

    A promise of future performance made with an intent not to perform as promised or

    A statement of opinion based on a false statement of fact or

    An expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion.

The state court continued the definition of fraud, stating

    Fraud also occurs when—

    a.    a party conceals or fails to disclose a material fact within the knowledge of that party,

    b.    the party knows that the other party is ignorant of the fact and does not have an equal opportunity to discover the truth,

    c.    the party intends to induce the other party to take some action by concealing or failing to disclose the fact, and

    d.    the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

The Defendant compares the above jury instructions to the definition of actual fraud to be used to find a debt non-dischargeable as held in ***RecoverEdge v. Pentecost***, 44 F.3d 1284, 1293 (5th Cir. 1995) and cited in ***Quinlivan***. ***RecoverEdge*** lays out a five factor test to determine the dischargeability of a debt under §523(a)(2)(A). The creditor must prove:

4

  (1)  the debtor made representations;

  (2)  at the time they were made the debtor knew that they were false;

  (3)  the debtor made the representations with the intention and purpose to deceive the creditor;

  (4)  that the creditor relied on such representations; and

  (5)  that the creditor sustained losses as a proximate result of the representations.

*In re Quinlivan*, 434 F.3d 317 (citing *RecoverEdge*, 44. F.3d 1293). The Debtor contends the definition used in the state court trial is broader than the *RecoverEdge* definition and it is therefore impossible to know what definition the jury was using in finding that Mr. Jablonski had committed fraud. As such, the Debtor contends, the Plaintiff creditor cannot use the findings of the state court to find the debtor liable for fraud. The Debtor also contends that because the creditor elected to recover in state court on the DTPA charge, and not the fraud charge, the fraud charge was not fully tried and therefore cannot be used for issue preclusion.[1] This issue was waived in court when it was agreed that the only remaining issue to be discussed in this case is the definition of fraud as used in the state court hearing.

## ANALYSIS

When an issue to be precluded was previously litigated in a state court trial, bankruptcy courts will look to the requirements under state law for collateral estoppel. In contrast, when the issue to be precluded was previously litigated under federal law, the Court will apply federal common law. *Reimer v. Smith*, 663 F.2d 1316, 1325 n. 9 (5th Cir.1981). As the issue in this

---

[1] At the state court trial, the jury was given additional instructions concerning the DTPA, or Deceptive Trade Practices Act. In a cause of action under the DTPA, a defendant may recover attorneys' fees and exemplary damages whereas in a cause of action for fraud, only actual damages are recoverable. As such, Ms. Kesselring chose to recover under the DTPA charge. The elements of a DTPA action are "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE §17.50(a)(1)). These elements are clearly different from the elements required to find fraud under 11. U.S.C. §523(a)(2)(A).

5

case was previously determined in a Texas State Court hearing, Texas law of collateral estoppel will apply. For the issue to be precluded under Texas law, the party invoking collateral estoppel must establish "(1) the facts sought be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288, 45 Tex. Sup. Ct. J. 1148 (Tex. 2002). This is to be contrasted with the federal common law requirements of collateral estoppel which require the party invoking estoppel to establish that "(1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a necessary part of the judgment in that earlier action." *RecoverEdge*, 44 F.3d 1290 (citing *Sheerin v. Davis (In re Davis)*, 3 F.3d 113, 114 (5th Cir. 1993)). The key difference between the two is the requirement that the issue be *identical* for federal collateral estoppel.

As discussed above, the instructions given to the jury in the state court action concerning fraud differ from the definition of fraud in *RecoverEdge*. At trial, the Debtor acknowledged that the first half of the definition of fraud from the state court trial would have been an acceptable definition for fraud so as to find the Debtor was collaterally estopped from arguing the issue in a dischargeability hearing. Debtor's contention stems from the fact that the instructions given to the jury go further than the definition used in *RecoverEdge*. The jury instructions first define fraud as occurring "when a party makes a material representation." (Ex. 7, p. 14.) *RecoverEdge* defines fraud similarly, requiring proof that "the debtor made representations." 44. F.3d 1293. The jury instructions then go on to provide a second definition of fraud, stating that fraud also occurs when "a party conceals or fails to disclose a material fact. . . ." (Ex. 7, p. 14.) The Debtor

6

argues that because both definitions of fraud were given to the jury as one question, it is impossible to know which definition the jury relied on in finding Mr. Jablonski guilty of fraud.

Both definitions given to the jury in the state court action require knowledge and intent on the part of the acting party. The major difference is that ***RecoverEdge*** requires a material misrepresentation and the state court jury instruction requires either a material misrepresentation or an omission. As the jury instruction is not clear as to whether the jury found Mr. Jablonski to have made a material misrepresentation or a material omission, the issue in this case ultimately requires this court to determine whether or not omitting a material fact, as opposed to making a material representation, is enough to find a debt nondischargeable under §523(a)(2)(A).

A "finding of fraud does not require an affirmative statement . . . [it] may be predicated on a failure to disclose [a] material fact. Courts have overwhelmingly held that a debtor's silence regarding material fact can constitute a false representation actionable under section 523(a)(2)(A)." ***Hughes v. Wells (In re Wells)***, 2006 Bankr. LEXIS 330 n.22 (Bankr. N.D. Tex. Mar. 8, 2006) (quoting ***In re Docteroff***, 133 F.3d 210, 216 (3rd Cir. 1997)). *See also* ***DiCrispino v. Adams (In re Adams)***, 348 B.R. 368, 376 (Bankr. E.D. La. 2005); ***Bean v. McMullen (In re McMullen)***, 2004 Bankr. LEXIS 2558, 16-17 (Bankr. N.D. Tex. July 15, 2004); ***In re Christian***, 111 B.R. 118, 122 (Bankr. W.D. Tex. 1989). In addition, the Bankruptcy Court for the Northern District of Mississippi, when confronted with almost identical jury instructions (including both actual fraud and fraud by failure to disclose a material fact) held that those instructions were "identical to the standards which would be applied by this court in a §523(a)(2)(A) nondischargeability trial." ***Big River Properties, Inc. v. Joseph H. Stafford (In re Joseph H. Stafford)***, 223 B.R. 94, 97-98 (Bankr. N.D. Miss. 1998). Based on the above, this Court holds

7

that a party's material omission may be considered to constitute a false representation actionable under §523(a)(2)(A).

As previously discussed, the Debtor has conceded that the fraud of Mr. Jablonski is imputed to all the partners in the law partnership. *See **Quinlivan***, 434 F.3d 314; ***Deodati v. Winkler (In re Winkler)***, 239 F.3d 746 (5th Cir. 2001). As such, Ms. Olivarez is liable to Ms. Kesselring for the fraud committed by Mr. Jablonski. Based on the foregoing, the Court finds that the jury determination that Mr. Jablonski committed fraud against Ms. Kesselring is conclusive to find fraud pursuant to §523(a)(2)(A) and the debt owed by Ms. Olivarez will be nondischargeable. Therefore

IT IS ORDERED that the debt owed to Ms. Kesselring pursuant to Count One of Creditor's Complaint to Determine Dischargeability of Debt in the amount of $11,044 be held nondischargeable.[2]

---

[2] Calculated as follows: $8,000 for actual damages, $1,210 for prejudgment interest and $1,834 for costs of court in the state court action.